Filed 6/30/23  In re Israel M. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION ONE

| | |
|---|---|
| In re ISRAEL M., a Person Coming Under Juvenile Court Law. | B325834 |
| | (Los Angeles County Super. Ct. No. 18LJJP00585) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. M.W., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Donald A. Buddle, Judge.  Affirmed.

William D. Caldwell, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Kimberly Roura, Deputy County Counsel, for Plaintiff and Respondent.

M.W. (Mother) appeals from an order terminating her parental rights to her son, Israel M., on the basis that the Los Angeles Department of Children and Family Services (DCFS) and the juvenile court did not satisfy their duties of inquiry and further inquiry under the Indian Child Welfare Act, 25 U.S.C. §§ 1901–1963, and related California statutes (collectively, ICWA). We need not decide whether any such error occurred because, even assuming either DCFS or the court failed to sufficiently execute their duties of inquiry and/or further inquiry, on the current record, any such error was not prejudicial.

## FACTS AND PROCEEDINGS BELOW

### A. *Family's Prior Dependency Proceedings and Related ICWA Inquiry*[1]

Israel was first adjudicated to be a dependent of the juvenile court in 2016 in Kern County, along with several maternal half siblings.[2] The Kern County Department of Human Services (the Kern DHS) investigated Israel's possible Native American heritage and whether ICWA applied to Israel as part of the dependency proceedings that followed. We have taken

---

[1] Because the only issue Mother raises on appeal is compliance with ICWA, we do not attempt to summarize Mother's child welfare history, the basis for the prior or instant dependency proceedings, or the basis for the termination of her parental rights to Israel. We discuss other dependency proceedings only to the extent they are relevant to our ICWA analysis.

[2] Mother has been involved in numerous dependency proceedings in Los Angeles County and Kern County over the past 20 years, and has had her parental rights to four of Israel's maternal half siblings terminated in connection therewith.

judicial notice of documents reflecting that,[3] in October 2016, the Kern DHS sent ICWA inquiries regarding Israel to the Bureau of Indian Affairs (BIA), Blackfeet Tribe of Montana, Colorado River Indian Tribes, Ramah Navajo School Board, and Navajo Nation in 2016, and received the following in response: a November 2016 letter from the Navajo Nation indicating the tribe could not determine, based on the ancestry information provided, whether Israel was eligible for membership in the tribe; a December 2016 letter from the Ramah Navajo School Board likewise so indicating; and a December 2017 letter from the Blackfeet tribe indicating Israel is not on the Blackfeet tribal rolls, nor is he an Indian child under ICWA based on affiliation with the tribe.

The Kern County court terminated jurisdiction over Israel in 2017 with a family law order granting joint legal custody of Israel to Mother and Israel's father, I.M. (Father), not a party this appeal, and granting sole physical custody of Israel to Father.

---

[3] These were among the documents of which DCFS has requested we take judicial notice. We hereby grant DCFS's request and take judicial notice of various records from dependency proceedings in Kern County regarding Israel, his siblings, and/or his half siblings. (See Evid. Code, § 452, subd. (d) ["[j]udicial notice may be taken of . . . [¶] . . . [¶] (d) [r]ecords of (1) any court of this state"].)

## B.    *Instant Proceedings and Initial ICWA Inquiry Therein*

On September 1, 2018, DCFS detained Israel from Father. On September 6, 2018, it filed the Welfare and Institutions Code section 300[4] petition on behalf of Israel leading to the instant dependency proceedings.

Prior to the hearing on the September 2018 petition, Father informed DCFS that he was part Navajo, but that neither he nor Israel was registered with the tribe.  Father filed Judicial Council form ICWA-020 (ICWA-020 form), on which he checked the box for "I may have Indian ancestry," crossed out the word "may," and wrote, "Navajo."  He further wrote, "[the] Kern County Court determined that I am not eligible for membership in the tribe."

Mother filed an ICWA-020 form on which she checked the box stating, "I may have Indian ancestry" and wrote, "Blackfoot."

At the detention hearing on September 6, 2018, the juvenile court asked Father about his reported Navajo heritage. Father confirmed the information he had provided in writing. Father further told the court that the only family member with additional information about Father's heritage was Israel's paternal grandfather, who was deceased.  "In an abundance of caution," the court "order[ed] [DCFS] to make further inquiries as to [Father's] American Indian heritage."

The court also inquired of Mother about her claimed Blackfeet heritage.  Mother identified the website "Ancestry.com" and "[her] grandma—[her] great[-]grandma" as sources of additional information about her Native American heritage.

---

[4] Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.

Mother stated her great-grandmother had a tribal membership number, and that the maternal grandfather would have a way to contact her. The court ordered DCFS to conduct further ICWA inquiry as to Mother.

### C. *Further ICWA Inquiry in the Instant Proceedings*

DCFS interviewed Father again on September 18, 2018 regarding his possible Native American heritage. Father offered the same information he had in the past, adding that his paternal grandmother (the paternal great-grandmother) had told him they were Navajo. DCFS asked Father if he could identify any family members who were registered with a tribe or would have additional information about the family's heritage. Father responded that the only relatives with such information—the paternal grandfather and paternal great-grandfather—were both deceased. Father repeatedly told DCFS he did not want to delay proceedings for further ICWA inquiry, because he " 'kn[e]w' " his ancestry "is not recognized[,]" he had "already [gone] through this with Kern [C]ounty[,]"and the Kern County court had already determined ICWA does not apply.

DCFS interviewed Mother on September 13, 2018 regarding possible Native American heritage. Mother stated her great-grandmother (the maternal great-great-grandmother) had told Mother she belonged to a tribe, " 'but she passed away and [Mother] [did not] remember right now.' " DCFS requested contact information for Mother's family members who might have additional information, and Mother said she would ask the maternal grandfather if Mother could provide his contact information to DCFS.

When DCFS interviewed Mother again a week later, Mother stated she did not know which tribe her family was affiliated with, and she planned to investigate her heritage through the website Ancestry.com. DCFS explained to Mother the need to collect as much information about Mother's family as possible in order to research possible tribal affiliation, and requested the names and contact information of Mother's relatives. Mother provided the maternal grandmother's name, but did not have any further information about the maternal grandmother. She provided the maternal grandfather's name, birthplace, and birthdate, but indicated his address was "confidential." (Capitalization omitted.) Mother had no information for the maternal great-grandparents on her mother's side. She provided the names of the maternal great-grandparents on her father's side, both of whom were deceased. She told DCFS she had provided all the family information she had.

On November 15, 2018, DCFS mailed "ICWA notice[s]" to the Navajo Nation, Ramah Navajo School Board Inc., Colorado River Indian Tribes, Secretary of the Interior, and Bureau of Indian Affairs (BIA). The Ramah Navajo School Board responded that it had no record of the family. It identified other sources of information about possible tribal membership, to both of which DCFS had already mailed ICWA inquiries (the BIA and Navajo Nation).

### D. *ICWA Finding and Termination of Reunification Services*

At the disposition hearing on February 25, 2019, the juvenile court found ICWA did not apply to Israel and ordered the parents to keep the court and DCFS informed of any new information relevant to ICWA.

6

On November 16, 2020, after an extended trial, the juvenile court terminated reunification services for both parents and scheduled a permanency planning hearing. The hearing was repeatedly continued.

### E. *ICWA Inquiry Efforts in Concurrent Kern County Dependency Proceedings Regarding Israel's Full Siblings*

Meanwhile, on February 8, 2022, a Kern County juvenile court found Israel's three full siblings to be dependents of the court, and new dependency proceedings began in Kern County regarding those three children.

Soon thereafter, Mother reported to the Kern DHS that she had Blackfeet ancestry, and Father reported having Navajo ancestry. The Kern DHS searched its records from previous dependency proceedings, and located the 2016-2017 responses the Kern DHS had received from the Blackfeet tribe, Navajo tribe, and the BIA "stating that the children's sibling [Israel] was not eligible for membership in the [i]nquired [t]ribes."

The Kern County court inquired of Mother and Father and found reason to believe the siblings may be Indian children. The Kern DHS therefore conducted additional investigation under ICWA.

During a March 11, 2022 phone interview, a Kern DHS social worker asked Mother about possible Native American heritage and reminded her she had previously told the authorities her family was affiliated with the Blackfeet tribe and/or a small tribe in Mississippi. In response, Mother said she did not know, and ended the call. A social worker spoke again with Mother on March 15, 2022, and Mother stated she has Pueblo heritage, and that her family lived on a reservation

7

in Mississippi. When the social worker asked how Mother had determined that her heritage was with the Pueblo tribe, rather than the Blackfeet tribe, Mother indicated she had "googled it." After the social worker noted that the Pueblo tribe was located in New Mexico and attempted to inquire further, Mother disconnected the call. The Kern DHS also spoke with Father, and Father provided the same information he had provided to DCFS in connection with the instant dependency proceedings.

In March 2022, the Kern DHS attempted to contact several extended relatives without success. Specifically, a Kern DHS social worker called the maternal grandmother (L.R.) and the maternal grandfather (D.W.), and in both instances, left a message requesting a return call. The social worker sent an ICWA letter, questionnaire, family tree and return envelope to L.R. as well. The social worker attempted to contact the paternal grandmother (S.D.) via phone and left a message requesting a call back with a woman who indicated she was S.D.'s colleague. Finally, the social worker attempted to contact the paternal grandfather via phone and left a message requesting a return call.

The Kern DHS was able to reach some extended family members as a result of its efforts in March 2022. First, a Kern DHS social worker spoke with maternal aunt C.J., who denied any information about Native American heritage and suggested the social worker contact the paternal grandfather (whom the social worker subsequently attempted to contact again, without success). Second, the social worker spoke with the maternal great-uncle (E.D.), the maternal grandfather's brother. E.D. said that "his great[-]grandmother was Cherokee . . . and [his] mother, [M.G.], was born in Missouri and is Cherokee [and], the

great[-]grandmother, [A.S.], unknown date of birth or middle name, was Cherokee and born on a reservation but [he] did not know which one." He denied that the family had any Blackfeet or Pueblo heritage to his knowledge. The Kern DHS was ultimately able to make contact with the paternal grandmother, who denied any Native American heritage. The Kern DHS also spoke with maternal aunt S.J., who denied any Native American heritage.

Following up on these discussions with the extended family, the Kern DHS sent ICWA inquiries to the Eastern Band of Cherokee Indians, the United Keetoowah Bank of Cherokee Indians, the Cherokee Nation, and the BIA. These inquiries provided the names of both parents, the children, and the names Mother and Father had provided for several extended family members (specifically the maternal grandparents, the paternal grandfather, the paternal great-grandmother, and the maternal great-grandmother), as well as the birth dates the Kern DHS had been able to obtain for some of these family members. The inquiry sent to the BIA specifically identified the potentially implicated tribes as "[p]ossibly Blackfeet" and "Navajo." The Cherokee tribes responded in April 2022 that the children—Israel's full siblings—were neither members of nor eligible for membership in those tribes. The BIA responded that it had insufficient information to determine tribal membership.

### F. *ICWA Finding and Termination of Parental Rights to Israel*

On October 31, 2022, counsel for DCFS asked the court to find ICWA did not apply "based on the updated investigation that has occurred in the sibling[s'] case [in Kern County]." The court found no reason to know ICWA applied through Mother or Father.

On December 2, 2022, the court terminated parental rights as to Israel. Mother appealed.

**DISCUSSION**

Mother argues on appeal that we must conditionally reverse the order terminating her parental rights to Israel, because DCFS and the juvenile court did not fulfill their duties of initial inquiry and further inquiry under ICWA by failing to sufficiently inquire of extended family members. Even assuming DCFS and/or the court did not sufficiently inquire of extended family members to the extent ICWA requires,[5] any such error would not be prejudicial on the current record, and thus would not warrant relief.

Under ICWA, DCFS and the juvenile court "have an affirmative and continuing duty to inquire" into whether a dependent child "is or may be an Indian child." (§ 224.2, subd. (a).) An "Indian child" to whom ICWA applies is defined as an unmarried child who "is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); § 224.1, subds. (a) & (b).) ICWA requires, under certain circumstances, that DCFS seek information about the

---

[5] We thus need not determine whether the duty to inquire of extended family members applies as part of the initial duty of inquiry, an issue recently addressed by *In re Robert F.* (2023) 90 Cal.App.5th 492, 500, petition for review filed May 22, 2023, S279743. (See *ibid.* [because child was not taken "into temporary custody under section 306" but rather pursuant to "a protective custody warrant under section 340[,] . . . [t]he inquiry obligation prescribed by subdivision (b) of section 224.2 [to inquire of extended family members] was not triggered"].)

10

child's heritage from extended family members as part of its initial inquiry.  (§ 224.2, subd. (b).)

DCFS must also conduct further inquiry when there is reason to believe that a child is an Indian child.  (§ 224.2, subd. (e).)  There is reason to believe this when there is "information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe," including "information that indicates, but does not establish," the grounds for reason to know.  (§ 224.2, subd. (e)(1).)  Further inquiry includes gathering biographical information from the parents and relatives, contacting the BIA, and contacting the tribes potentially involved.  (§ 224.2, subd. (e)(2).)

A failure to sufficiently inquire of extended family members in connection with ICWA duty of inquiry is prejudicial and requires conditionally reversing a judgment terminating parental rights only where "the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744 (*Benjamin M.*); see also *In re Darian R.* (2022) 75 Cal.App.5th 502, 509 [applying test for prejudice from *Benjamin M.*]; *In re A.C.* (2022) 75 Cal.App.5th 1009, 1017 [assessing whether there was "readily obtainable information that was likely to bear meaningfully on whether [the child] was an Indian child"].)  While the instant proceedings were pending in Los Angeles County, the Kern DHS engaged in efforts to contact the only living extended family members anyone had identified—either in the Kern County proceedings regarding Israel's full siblings that began in 2022 or the instant proceedings regarding Israel—as possibly having information relevant to whether ICWA applies to Israel and his siblings.  In response

11

to these efforts, the Kern DHS either did not receive a response, or received a response denying Native American heritage.  In addition, the Kern DHS efforts to contact potentially relevant tribal organizations as recently as 2022 also did not suggest Israel is an Indian child under ICWA.  Thus, the record does not indicate that conditionally reversing so that DCFS may again attempt to contact these same relatives and/or again reach out to these same tribal organizations is "likely to bear meaningfully upon whether [Israel] is an Indian child." (*Benjamin M., supra*, at p. 744.)

Indeed, the Kern DHS contacted or attempted to contact all but one of the extended family members Mother specifically identifies as readily available for DCFS to contact in this case, were we to conditionally reverse.  The one relative Mother notes neither the Kern DHS nor DCFS inquired of regarding possible Native American heritage is paternal aunt T.M.  However, considering the record as a whole—specifically, recent responses from several paternal relatives indicating that the family had no recognized Native American heritage, 2022 responses from tribal organizations that did not find Native American heritage on the paternal side, and 2016 responses from tribal associations to this same effect—this is not sufficient to establish prejudice.  Put differently, given this additional information, T.M. is no longer a person reasonably likely to have information suggesting Native American heritage on the paternal side of the family.  (See *In re D.S.* (2020) 46 Cal.App.5th 1041, 1053 (*D.S.*) [although great-grandmother was potentially a " 'person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility [under ICWA,]' " "the [a]gency reasonably could conclude (based on its further communications

12

with [the] [a]unt) that no further inquiry was needed because there was no further information of value to obtain from [great-grandmother]"].)

We conclude there can be no prejudice from the error Mother argues occurred, because the Kern DHS recently conducted the very inquiries Mother contends DCFS should have conducted—and that Mother argues a conditional reversal would allow DCFS to conduct. Indeed, the Kern DHS did so while the instant dependency proceedings were pending—thus, at the very time Mother argues DCFS should have been doing so. Mother identifies no reason why DCFS repeating the same investigative actions the Kern DHS recently completed and did not yield any indication that Israel is an Indian child as defined under ICWA would yield additional or different information, were DCFS to repeat them.[6]

To support her argument that the Kern DHS efforts are insufficient, Mother cites the general proposition that the duty of a court and DCFS to inquire under ICWA is an ongoing one. The ongoing nature of that duty does not require, however, that

---

[6] In opposing DCFS's request that we take judicial notice of the documents reflecting the Kern DHS's efforts, Mother argues that they were not before the juvenile court and that the more appropriate procedure, rather than taking judicial notice of and relying on these documents on appeal, would be to remand with the instruction that the juvenile court consider them. This would be highly inefficient and would delay permanency for Israel. (See *In re Josiah Z.* (2005) 36 Cal.4th 664, 676 [permitting consideration of postappeal evidence under certain circumstances when doing so would " 'expedit[e] the proceedings and promot[e] the finality of the juvenile court[']s orders and judgment' "].)

the same investigative efforts be repeated when there is no indication that they will yield different results. (See *In re A.M.* (2020) 47 Cal.App.5th 303, 323 (*A.M.*) ["[t]here is no need for further inquiry . . . where parents 'fail[ ] to provide any information requiring follow[-]up' [citations], or if the persons who might have additional information are deceased [citation], or refuse to talk to [the agency]"].)

Mother also argues that "it is unreasonable to infer from [the Kern DHS's] unfruitful efforts—in relation to child Israel's siblings in a neighboring county—that [DCFS's] initial and further inquiries would be equally unfruitful in this case." (Italics omitted.) But Mother does not explain why this is unreasonable, when the additional inquiry she is claiming the court and DCFS should have undertaken is the same as what the Kern DHS undertook; namely, reaching out to the same relatives about the same two families.

Mother further argues that, in assessing ICWA error and prejudice therefrom, we cannot rely on the responses to inquiries DCFS and the Kern DHS received from the BIA and tribal associations, because the inquiries did not include additional identifying information that DCFS might learn, were it to conduct further inquiry of extended family members. But again, Mother offers no basis for the assumption that reaching out to the same family members the Kern DHS contacted or attempted to contact would yield any more information than the Kern DHS received in response to its efforts. ICWA does not require DCFS to endlessly "cast about" for investigative leads (*D.S., supra*, 46 Cal.App.5th at p. 1053; *A.M., supra*, 47 Cal.App.5th at p. 323), and "DCFS's inquiry

14

obligation is 'not an absolute duty to ascertain or refute Native American ancestry.' " (*In re D.F.* (2020) 55 Cal.App.5th 558, 570.)

Finally, although Mother is correct that the Kern DHS only contacted a few of the hundreds of tribes in the United States, the duty of inquiry does not require reaching out to *all* Native American tribes, or reaching out to a particular tribe without some indication that the child might be affiliated therewith. The record contains no basis for concluding Israel may have a connection with any specifically identified Native America tribe other than those of which the Kern DHS already inquired.

In sum, even assuming there was insufficient inquiry of extended family members, this error was not prejudicial in light of the Kern DHS conducting—in 2022 and while the instant dependency proceedings were ongoing—the very inquiries Mother argues we must facilitate by conditionally reversing in the instant matter.

## DISPOSITION

The court's order terminating Mother's parental rights is affirmed.

<u>NOT TO BE PUBLISHED</u>.


ROTHSCHILD, P. J.

We concur:


BENDIX, J.


WEINGART, J.